**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT CHATTANOOGA**

| | | |
|---|---|---|
| ALEX STEVINO PORTER | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No.: 1:14-CV-00171-HSM-CHS |
| | ) | |
| DAVID SEXTON, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM OPINION

Following his conviction for first-degree murder, Petitioner, Alex Stevino Porter, has filed

a pro se petition for a writ of habeas corpus, pursuant to 28 U.S.C. §2254, alleging sufficiency of

the evidence claims, violations of his Sixth Amendment rights to confrontation and the effective

assistance of counsel, and prosecutorial suppression of exculpatory evidence [Doc. 1]. Petitioner's

petition for habeas corpus was stayed in its entirety, pursuant to his motion for abeyance requested

to allow him to exhaust state court remedies, and he filed a Motion to Reopen on January 22, 2018

[Doc. 34]. Petitioner's Motion to Reopen will be **GRANTED**. After reviewing the parties' filings

and the relevant state court record, the Court has determined that Petitioner is not entitled to relief

under §2254, and no evidentiary hearing is warranted. *See* Rules Governing § 2254 Cases, Rule

8(a) and *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). For the reasons set forth below, the

§2254 petition will be **DENIED**, and this matter will be **DISMISSED**.

### I. BACKGROUND

In June of 2005, Petitioner was charged with first-degree murder and conspiracy to commit

first-degree murder related to the shooting death of Antonio Ware. *State v. Porter*, No. E2007-

01101-CCA-R3-CD, 2008 Tenn. Crim. App. LEXIS 965, at *2 (Tenn. Crim. App. Dec. 10,

2008)("*Porter I*"). At trial, the State adduced evidence that on August 2, 2004, Petitioner asked Dustin Witt to drive him near Tennessee Wesleyan College; the two were accompanied by Kenneth Hammonds, Cornell Perry Gunter, and Clifton Omar Robinson.[1] *Id.* While Mr. Witt parked the car, the other four men walked to the home of Kim Arnwine. *Id.* at *3. Petitioner, along with Mr. Gunter and Mr. Robinson, hid behind bushes near Ms. Arnwine's home; however, Mr. Hammonds was apprehensive about the body language of the other men and decided to leave the area. *Id.* at *4.

The victim and an associate, Marvin Goodman, had stopped by Ms. Arnwine's home around 9:30 or 9:45 p.m. that same evening after seeing Ms. Arnwine earlier in the day at Cook Park, an area known for drug activity. *Id.* at *3. Ms. Arnwine testified at trial that the victim, who was carrying a gun, was agitated and mentioned going to "take care of" some boys in Athens and that Mr. Goodman attempted to calm him down. *Id.* She further stated that while the victim was in her home, her brother Ezra Arnwine, who frequently associated with Mr. Robinson, Mr. Gunter, and Mr. Hammonds, called and asked if she had company. *Id.* at *4. Petitioner called soon after, also asking if she had company and if he could come over, to which Ms. Arnwine indicated that he could come over in a little while after her company, whom she did not identify, left. *Id.* at *3

---

[1] While Kenneth Hammonds was not charged, originally Omar Robinson, Perry Gunter, and Dustin Witt were indicted for the murder, while Petitioner was indicted only as an accessory [Add. 1-2 p. 1-2]. It is worth noting that all three of these men testified against Petitioner at trial after being convicted or indicted on later charges. Mr. Robinson and Mr. Gunter, each of whom were serving lengthy federal sentences, would be eligible for a sentence reduction as a result of testifying and only received three-year sentences for being accessories to the shooting described herein [Add. 1-4 p. 224-228; Add. 1-5 p. 288-292]. While Mr. Gunter did not give a statement prior to the arrangement of his plea deal, Mr. Robinson's pre-trial statements were different than the testimony he proffered at trial [*Id.*]. Likewise, Mr. Witt's statements regarding this case changed after his agreement to make a statement in exchange for pleading guilty to only accessory after the fact charges regarding this set of facts, after he received an additional indictment for other charges [Add. 1-5 p. 253-257].

– 4.  Confirming this testimony, Mr. Witt testified that he and Petitioner had moved from the bushes to a shed behind Ms. Arnwine's house and that he overheard the phone call.  *Id.* at *4.  He stated that after hanging up the phone, Petitioner pulled out a gun and stated that he was "ready to give it to this mother f---er because he tried to rob my sister Mary not too long ago and I still haven't forgot [sic] about it."  *Id.* at *4 – 5.  Mr. Witt testified that at this point he also decided to leave.  *Id.* at *5.  Mr. Robinson, who had remained in the bushes, left after approximately ten to fifteen minutes.  *Id.*

Mr. Witt testified that as he began to leave, the victim and Mr. Goodman exited Ms. Arnwine's house,[2] and that when Mr. Witt turned around, he saw Petitioner crouch down and fire his weapon at the victim.  *Id.*  Mr. Gunter confirmed this testimony; he stated that he heard Petitioner say he was going to "handle this," and likewise saw Petitioner crouch down and shoot the victim, without any indication that the victim ever saw Petitioner before he shot.  *Id.* at *6.  Mr. Witt claimed that he dropped his keys and that by the time he located them, Petitioner and Mr. Gunter were running towards him and they all got into the car and left.  *Id.* at *5.  They later picked up Mr. Robinson.  *Id.*

Ms. Arnwine, who had heard the gunfire, had huddled her children on the floor when Mr. Goodman ran back into the house to tell her that something had happened to the victim.  *Id*. at *4.  Ms. Arnwine then called 911, after which she walked outside and saw the victim's body on the ground.  *Id.*  Van Sliger, a nearby neighbor, stated that he was awakened by the gun shots and when he looked out his window, "he saw three black males run around his garage, get into an older

---

[2] According to Ms. Arnwine this was around 10 to 15 minutes after the pair had arrived. *Porter I*, at *4.

model white Oldsmobile or Buick, and drive away." *Id.* at *6. Mr. Sliger then drove to the scene where he saw police officers as well as the victim's body. *Id.*

Mr. Robinson and Mr. Gunter each gave their weapons to Petitioner, who was to dispose of them along with his own weapon. *Id.* at *5 – 6. Petitioner would later lead police officers to a two-feet deep hole in a wooded area with burnt pieces of a 9mm Hi-Point semi-automatic and other burnt material in it. *Id.* at *6 – 7. Officers indicated that "investigation revealed that [Petitioner] was in possession of the Hi-Point 9mm on the night of Mr. Ware's death." *Id.* at *7.

When officers arrived at the scene, they found the body of Mr. Ware, who had been shot several times. *Id.* at *2. They likewise found "one bullet in the gravel under Mr. Ware's head and several other shell casings that were both 9mm and .380 caliber."[3] *Id.* at *6. Autopsy revealed that Mr. Ware had died of the multiple gunshot wounds to his head, arm, chest[4], and hip, which had moved from back to front and right to left respectively. *Id.* at *7. Special Agent Shelly Betts, an agent with the Tennessee Bureau of Investigation, "examined three fired bullets, six fired cartridge cases, several unfired cartridges, two revolvers, one pistol and firearms that had been destroyed with some sort of torch." *Id.* She found that all three bullets had similar rifling, but that while she could identify the two .380 bullets as coming from the same weapon, the 9mm bullet "did not have 'sufficient individualizing characteristics' remaining for her to conclusively state that it was also fired from the same weapon." *Id.* at *7-8. Of the six cartridge cases, Agent Betts determined that three of the cartridge cases were .380 cases while the other three were 9mm cases;

---

[3] Officers also "found an unloaded Skorpion 9mm handgun at Ms. Arnwine's residence under a cushion on the couch. There was also a clip located nearby that fit the gun." *Porter I*, at *6.

[4] Dr. Amy Mcmaster who performed the autopsy indicated that the wound to Mr. Ware's chest may have been a reentry would from his arm. *Id.* at *7.

she ascertained that all were fired from the same weapon, but was unable to determine if they were fired from the destroyed Hi-Point pistol. *Id.* at *8.

On January 30, 2007 a McMinn County jury convicted Petitioner of first-degree premeditated murder and sentenced him to life in prison. *Id.* at *1. Petitioner appealed this conviction to the Tennessee Court of Criminal Appeals ("TCCA"), raising claims (1) that the evidence was insufficient to support his conviction, (2) that the trial court erred in denying his Motion for Judgment of Acquittal, and (3) that the trial court deprived him of his Sixth Amendment right to present a defense by excluding the testimony of Valerie Ware and Mary White [Brief of Appellant on Direct Appeal, ADD. 2-1]. The TCCA affirmed the conviction. *Id.* Petitioner then applied for permission to appeal to the Tennessee Supreme Court ("TSC") which the TSC denied. *State v. Alex Stevino Porter*, No. E2007-01101-SC-R11-CD, 2009 Tenn. LEXIS 446 (Tenn. May 4, 2009).

Petitioner next filed a petition for state post-conviction relief, alleging the ineffective assistance of counsel and the prosecution's suppression of exculpatory evidence, which was denied [Petition for Relief from Conviction or Sentence, ADD. 3-1 p.1 – ADD. 3-2 p. 205]. Petitioner appealed the dismissal of his post-conviction petition to the TCCA alleging five grounds of the ineffective assistance of counsel, one ground of the ineffective assistance of appellate counsel, and that he was ultimately deprived of due process [Brief of Appellant on Post-Conviction Appeal, ADD. 4-1]. The TCCA affirmed the denial. *Alex Stevino Porter v. State*, No. E2012-00481-CCA-R3-PC, 2013 Tenn. Crim. App. LEXIS 796 (Tenn. Crim. App. Sept. 18, 2013)("*Porter II*"). Petitioner then applied for permission to appeal to the TSC which was again denied. *Alex Stevino Porter v. State*, No. E2012-00481-SC-R11-PC, 2014 Tenn. LEXIS 201 (Tenn. Mar. 5, 2014).

Finally, Petitioner filed this petition for writ of habeas corpus in June of 2014. On March 21, 2016, Petitioner filed a motion for abeyance, asking that the Court stay his case until he had properly

exhausted his available local and state court remedies [Doc. 20]. There was no opposition and the Court stayed the matter in its entirety and ordered Respondent to notify the Court when the state remedies were exhausted and to file an amended answer addressing Petitioner's additional state claims [Doc. 21]. On March 16, 2016, Petitioner filed a motion in state court to re-open post-conviction proceedings, raising the ineffective assistance of counsel for improperly informing Petitioner of his right to testify and prosecutorial misconduct [Doc. 27 p. 2].[5] On April 11, 2016, the post-conviction court dismissed the motion as untimely and duplicative of a previously decided petition, and found that it failed to provide a legal basis for reopening [*Id.*]. Petitioner did not appeal this judgment to the TCCA [Doc. 27 p. 3]. Respondent did not alert the court to the termination of state court proceedings or file a supplemental response as ordered until April 19, 2017 [Doc. 27].

Petitioner filed a Motion to Reopen federal habeas proceedings on January 22, 2018 [Doc. 34]. Petitioner did not, at any time, attempt to amend his federal habeas petition to include his claim that counsel was ineffective for failing to alert him to his right to testify at trial. The only mention of this claim in federal pleadings was a reference to it in his Motion for Abeyance, filed nearly two years after his federal habeas petition. As such, this claim is not properly before the Court, but the Court notes that even if it were, it would clearly be barred by the statute of limitations under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. §2244(d)(1)(A), (2). Accordingly, the Court will now address the claims for §2254 relief that Petitioner raised in his original petition below.

---

[5] It is unclear from Petitioner's Motion to Reopen whether he did intend to raise prosecutorial misconduct or suppression as a ground to reopen, as he pleaded no facts or law under this theory and addressed only his ineffective assistance of counsel claim [Doc. 27].

## II. STANDARD OF REVIEW

Under the AEDPA, codified in 28 U.S.C. §2254, a district court may not grant habeas corpus relief for a claim that a state court adjudicated on the merits unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1) and (2). This standard is intentionally difficult to meet. *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quotation marks omitted). Under the unreasonable application clause, the proper inquiry is whether the state court's decision was "objectively unreasonable," and not simply erroneous or incorrect. *Williams v. Taylor*, 529 U.S. 362, 409 – 11 (2000). The AEDPA likewise requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). Where the record supports the state court's findings of fact, those findings are entitled to a presumption of correctness which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## III. ANALYSIS

### A. Exhaustion and Procedural Default

In his §2254 petition, Petitioner raises thirty-six claims, one alleging that the evidence was insufficient to support his conviction, one contending that his Sixth Amendment right to present a defense was violated, thirty-one claims of the ineffective assistance of trial and appellate counsel, and three claims that the prosecution suppressed exculpatory evidence [Doc. 1]. Respondent raises

that many of the claims set forth in Petitioner's federal habeas corpus petition have been procedurally defaulted and may not now be addressed on the merits [Doc. 9 p. 2 – 9]. Petitioner raises various grounds as cause to excuse any such procedural default, however, this Court finds that with the exception of six, Petitioner's claims were not fairly presented to the state courts and there is no cause for which to excuse his default.

Before a federal court may grant habeas relief to a state prisoner, the prisoner must first exhaust the remedies available in state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims to state courts to ensure states have a "full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990); *See O'Sullivan*, 526 U.S. at 842. Generally, to fulfill the exhaustion requirement, each claim must have been presented to all levels of the state appellate system, including the state's highest court. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009). However, the Tennessee Supreme Court has established that when the Tennessee Court of Criminal Appeals has denied relief on a claim, it is exhausted regardless of appeal to the Tennessee Supreme Court. Tenn. S. Ct. Rule 39 (Supp. 2001). Although exhaustion is typically required for merits review of a claim, if there are no further state court remedies available to a petitioner, lack of exhaustion will not foreclose merits review. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

Regardless of exhaustion, a claim may be precluded from review if it is procedurally defaulted. *Wallace v. Sexton*, 570 Fed. Appx. 443, 449 (6th Cir. 2014). Procedural default occurs when (1) the claim was never presented to the highest available state court and is now barred from such presentation by a state procedural rule, or (2) a state court was prevented from "reaching the merits of the petitioner's claim" because petitioner failed to comply with an applicable state

procedural rule, which is regularly enforced and is an "adequate and independent" state ground. *Id.* (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)); *Seymour v. Walker*, 224 F.3d 542, 549-550 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 72, 80, 84 87 (1977)).

Petitioner has twice been before the TCCA, once on Direct Appeal and again appealing the denial of post-conviction relief. On Direct Appeal, Petitioner raised only three claims: (1) that the evidence was insufficient to support his conviction, (2) that the trial court erred in denying his Motion for Judgment of Acquittal, and (3) that the trial court deprived him of his Sixth Amendment right to present a defense by excluding the testimony of Valerie Ware and Mary White [Brief of Appellant on Direct Appeal, ADD. 2-1]. In the appeal of the dismissal of his post-conviction appellate brief, Petitioner raised five claims of the ineffective assistance of counsel alleging that counsel was ineffective for inadequately developing a theory of self-defense, allowing a witness to improperly assert Fifth Amendment silence, failing to inform Petitioner of his right to testify, announcing to the jury that Petitioner was incarcerated, and failing to challenge the expert testimony proffered by Agent Betts. [Brief of Appellant on Post-Conviction Appeal, ADD.4-1, p. 36]. He likewise alleged an unspecific claim of the ineffective assistance of appellate counsel, which does not encompass any of the facts or legal theories included in his federal habeas petition regarding appellate counsel, and another generalized claim alleging that he was denied due process in his post-conviction proceedings due to "the deficiencies marring the investigation and presentation of evidence at the evidentiary hearing" [*Id.*].

Although Petitioner raised nearly all of the claims he now raises in his post-conviction petition, he failed to raise them on direct appeal and abandoned these claims on appeal of the

dismissal of his post-conviction petition, thus rendering them unexhausted.[6]  However, due to

Tennessee's one-year statute of limitations and one petition rule, state remedies are foreclosed to

Petitioner and lack of exhaustion will not prevent federal habeas review of his claims.  *Rust*, 17

F.3d at 160; *See* Tenn. Code Ann. § 40-30-102.  Instead, Petitioner's claims are procedurally

defaulted as a result of having never been raised to the state's highest court and being foreclosed

from such presentation now.  *Wallace*, 570 Fed. Appx. at 449.  As such, Petitioner's claims will

only be considered on their merits to the extent that he can demonstrate cause and actual prejudice

to excuse this default.

### B.  Cause and Prejudice

Petitioner contends that his procedural default should be excused for cause; specifically,

he alleges that the procedural default of any ineffective assistance of counsel claims may be

attributed to the ineffective assistance of post-conviction counsel and that the procedural default

of any prosecution suppression claims is a result of the state's continued suppression of the

evidence needed to properly raise these claims [Doc. 1, Doc. 15].  Neither of these are sufficient

cause to excuse Petitioner's procedural default and his defaulted claims will not be reviewed on

their merits.

The Courts have carved out a narrow set of circumstances in which procedural default may

be excused and defaulted claims may be evaluated on their merits.  Procedurally barred claims

---

[6] To the extent that Petitioner attempts to claim that raising some claims of ineffective assistance of counsel would allow him to raise other issues of ineffective assistance of counsel at this stage, the Court notes that the Sixth Circuit has held such attempt at "fair representation" inadequate. *See Wong v. Money*, 142 F.3d 313, 321-22 (6th Cir. 1998)(ineffective assistance of counsel claim procedurally defaulted where petitioner's argument in state courts relied upon different grounds than argument on habeas appeal; *see also Pillette v. Foltz*, 824 F.2d 494, 497-98 (6th Cir. 1987)(petitioner did not exhaust his state remedies for all ineffective assistance of counsel claims if the state courts were presented with only one aspect of his attorney's performance).

may be considered on their "merits only if the petitioner establishes (1) cause for his failure to comply with the state procedural rule and actual prejudice from the alleged violation of federal law or (2) demonstrates that his is 'an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Wallace*, 570 Fed. Appx. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)"; *See House v. Bell*, 547 U.S. 518, 536 (2006). To show sufficient "cause," Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Murray*, 477 U.S. at 488. Where petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).

### 1. Ineffective Assistance of Counsel as Cause

Ordinarily, there is "no constitutional right to an attorney in state post-conviction proceedings," so the ineffective assistance of counsel in post-conviction proceedings does not qualify as "cause" to excuse procedural default of constitutional claims. *Coleman v. Thompson*, 501 U.S. 722, 725, 755 (1991). However, the Supreme Court has carved out an exception to this rule for claims of ineffective assistance of counsel when those claims may be raised for the first time in post-conviction proceedings or "where a state procedural framework… makes it highly unlikely… that a defendant [had] a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013) (citing *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012)). This exception applies in Tennessee. *See Sutton v. Carpenter*, 745 F.3d 787, 795 – 96 (6th Cir. 2014).

However, claims of ineffectiveness of post-conviction *appellate* counsel cannot constitute cause to excuse procedural default because it is not an initial-review collateral proceeding. *Martinez*, 132 S. Ct. at 1320.

> Although *Martinez* and *Trevino* expanded the class of cases in which a petitioner can establish cause to excuse the procedural default of ineffective-assistance claims, the Supreme Court cautioned that the rule 'does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial.'

*Wallace*, 570 Fed. Appx. at 453 *(quoting Martinez*, 132 S. Ct. at 1320). The Sixth Circuit has only applied the *Martinez* exception to claims of ineffective assistance of counsel, and declined to apply it to suppressed evidence, prosecutorial misconduct, trial error, ineffective assistance of appellate counsel, and cumulative error. *See Abdur-Rahman v. Carpenter*, 805 F.3d 710, 714, 716 (6th Cir. 2015).[7]

Petitioner raises the ineffective assistance of post-conviction counsel to excuse the procedural default of his claims of the ineffective assistance of trial and appellate counsel. However, Petitioner's claims were in fact pleaded at the post-conviction trial level, his initial collateral review, in his own pro se petition and accompanying memorandum of law, which was not amended by counsel [Petition for Relief from Conviction or Sentence, Add. 3-1 p.1 – Add. 3-2 p.178]. Moreover, although Petitioner appears to allege that he was unable to bring forth some of the claims he raised at the trial level on appeal due to post-conviction counsel's inadequate preservation and maintenance of the record, the Court simply does not have enough facts to evaluate this claim. The majority of Petitioner's claims were not raised in his appellate brief; there is insufficient information to determine whether this was a result of counsel's strategic winnowing

---

[7] The Supreme Court likewise reiterated in *Davila v. Davis*, 137 S.Ct. 2058, 2062 (2017) that the *Martinez* exception does not extend beyond claims of ineffective assistance of trial counsel, and specifically declined to apply it to ineffective assistance of appellate counsel.

of claims or if there was some underlying basis which precluded his claims. To the extent that he attempts to claim the ineffective assistance of post-conviction *appellate* counsel for failing to raise all of his claims on appeal, such is an inadequate ground to excuse procedural default. *See Wallace*, 570 Fed. Appx. at 453. Petitioner has not successfully pleaded that the ineffective assistance of his post-conviction counsel was an external factor precluding him from raising his ineffective assistance of counsel claims in his first appeal.

### 2. Prosecutorial Suppression as Cause

Petitioner also relies on the "continued failure of the Respondent to disclose… exculpatory evidence" as cause for which to excuse his procedural default [Doc. 1, Doc. 15]. Presumably, Petitioner relies on this ground to excuse the procedural default of his claims that the prosecutor suppressed exculpatory evidence at trial.

Prosecution suppression may serve as a ground to excuse procedural default when the ongoing suppression sufficiently frustrates a petitioner's ability to bring the claim and the cumulative effect of the suppressed evidence was reasonably likely to have produced a different result at trial. *See Kyles v. Whitley*, 514 U.S. 419 (1995). However, as clarified above, Petitioner's claims are procedurally defaulted because he failed to raise them on appeal; he did, however, raise these claims at the post-conviction trial court level. While prosecution suppression may provide cause in some cases, it does not logically follow that a Petitioner who was aware of the factual basis for his claims and did raise them at the trial court level was impeded by the prosecution from raising his claims on appeal. Further, Petitioner has not established the factual basis for this claim that the prosecution did suppress substantial cumulative evidence by clear and convincing evidence. Petitioner has not established cause to excuse his procedural default.

### C. Merits Analysis

As a result of Petitioner's procedural default, only six of his original thirty-six claims will be reviewed on their merits. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in 28 U.S.C. §2254, *et. seq.,* a district court may not grant habeas corpus relief for a claim that a state court adjudicated on the merits unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1) and (2). This standard is "intentionally difficult to meet." *Woods*, 135 S. Ct. at 1376 (quotation marks omitted).

"A state court's decision is 'contrary to' clearly established law 'if the state court arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Wallace*, 570 Fed. Appx. at 450 (quoting *Williams*, 529 U.S. at 413). Under the "unreasonable application clause," the proper inquiry is whether the state court's decision was "objectively unreasonable," and not simply erroneous or incorrect. *Williams*, 529 U.S. at 409 – 11. As to a claim that the state court's decision was based on an unreasonable determination of the facts, the AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). Where the record supports the state court's findings of fact, those findings

are presumed to be correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### 1. Sufficiency of the Evidence

Petitioner claims that his conviction was obtained as the result of insufficient evidence under *Jackson v. Virginia*, 443 U.S. 307 (1979), because he alleges that the evidence at trial primarily consisted of uncorroborated accomplice testimony and that the only evidence which came from Petitioner himself related to disposing of the firearms after the shooting, which would not prove murder [Doc. 1 p. 4 – 5]. Respondent contends that the state court rejected Petitioner's challenge to the sufficiency of the evidence by finding that the accomplice testimony was properly corroborated and that the evidence was then sufficient, and that these findings do not rely on an unreasonable application of federal law or unreasonable finding of fact [Doc. 9 p. 25 – 30]. The Court finds that the state court's holding that the evidence was sufficient to support Petitioner's conviction is not based on an unreasonable application of federal law.

To evaluate challenges to the sufficiency of the evidence, federal courts sitting in habeas review analyze "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The Courts look to the evidence supporting the conviction with specific reference to the elements of the crime as established by state law. *Id.* at 324 n.16. However, because the trier of fact is charged with, and in the best position for, resolving conflicts in testimony, weighing the evidence, and drawing inferences, their verdict will be given deference. *Id.* at 319. Challenges to the sufficiency of the evidence are very difficult for petitioners to succeed on due to the double layer of deference granted to these claims. *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). Not only is the trier of fact's verdict given deference as

detailed above, but under the AEDPA, the federal courts are tasked with deference to the state court of appeals' consideration of this verdict. *Id.*

On Direct Appeal, Petitioner argued that the evidence demonstrated that the victim was shot from two different guns, that he could not have been the shooter based on his alleged location at the scene, and that there was no scientific evidence linking him to the scene [Brief of Appellant on Direct Appeal, Add. 2-1 p. 10-17]. He further contended that the majority of the evidence at trial consisted of uncorroborated accomplice testimony, which was inadmissible under Tennessee law [*Id.*]. The TCCA applied state law mirroring *Jackson* to find that it was tasked with deference to the jury's verdict and had to grant the state "the strongest legitimate view of the evidence," in assessing whether "any rational trier of fact could have found Petitioner guilty of each element of the offense beyond a reasonable doubt." *Porter I*, at *10. The court then found that the evidence was sufficient to uphold Petitioner's conviction for first-degree murder, which is the "premeditated and intentional killing of another." *Id.* at *13, 18. Specifically, the TCCA held that looking at the evidence in the light most favorable to the state, the evidence showed that Petitioner indicated his anger and desire to confront the victim, went with a group of men to a home where the victim was located, and hid outside. *Id.* at *14-18. Petitioner said he was "getting ready to give it to this mother f-----" and "that he was going to 'handle'" the victim, and when the victim left the house, Petitioner crouched down and shot him multiple times. *Id.* Petitioner, along with the other men, then fled the scene and took steps to conceal guns belonging to the parties. *Id.* The court found that although much of the evidence did come from accomplice testimony, which did necessitate corroboration under Tennessee precedent, each accomplice's testimony in Petitioner's case was appropriately corroborated by the other accomplice testimony, by other witnesses, and even through Petitioner's own actions in taking police to the destroyed weapons. *Id*.

The Court cannot find that the state court's holding relied on an unreasonable application of federal law. Although the court did not apply *Jackson*, it applied state cases precisely mirroring *Jackson* and did not do so in an objectively unreasonable manner. The Court likewise finds that there was sufficient evidence to uphold Petitioner's conviction under *Jackson*. There was substantial evidence against the Petitioner in this case, that in the light most favorable to the state, demonstrated that Petitioner had motive for the killing, orchestrated the shooting, shot his weapon at the victim multiple times, and took steps to secrete the weapons after the shooting. Although Petitioner attempts to undermine this evidence as lacking credibility because it came from testimony of his uncorroborated accomplices, questions of credibility and determinations of weight are for the jury, not appellate courts, and it is "well-established Sixth Circuit precedent that 'uncorroborated testimony of an accomplice may support a conviction under federal law.'" *See United States v. Griffin*, 382 F.2d 823, 829 (6th Cir. 1967); *United States v. Echols*, 84 Fed. Appx. 544, 549 (6th Cir. 2003). The Court declines to find that the state court was unreasonable in finding that a rational juror could have found Petitioner guilty of premeditated and intentional murder based on the evidence presented. Petitioner is not entitled to relief on this claim.

### 2. Sixth Amendment Right to Present a Defense

Petitioner claims that the trial court violated his Sixth Amendment right to confrontation[8] and to present a defense when it prohibited Petitioner from calling Mary White and Valerie Ware, from whom Petitioner intended to elicit testimony showing the victim's character for violence and that Petitioner did not in fact know about the robbery rumor suggested by the state as motive [Doc. 1 p. 6-7]. Respondent alleges that as a question regarding the state's admission of evidence, which

---

[8] The Court notes that Petitioner's alleged facts and claim do not fit within a constitutional analysis of the right to confrontation which reserves a criminal defendant the "right… to be confronted with the witnesses against him." U.S. Const. amend VI.

would fall under state evidentiary law, this claim is only cognizable on habeas review if it results in a fundamentally unfair trial, which is not satisfied here [Doc. 9 p. 31-35]. The Court finds that the excluded evidence did not undermine Petitioner's trial and is not ground for relief.

The Constitution "guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). This does not mean, however, that a defendant is entitled to "every opportunity" to present his case and relevant evidence is frequently excluded at the discretion of the judge who is given "wide latitude to exclude evidence that is repetitive…, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues." *Crane*, 476 U.S. at 689-90 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986))(internal quotation marks omitted). However, in some cases the exclusion of evidence will violate the right to present a defense. To determine if the exclusion of evidence presents such a violation, the Court should consider "the relevancy and cumulative nature of the excluded evidence, and the extent to which it was 'central' or 'indispensable' to the defense." *Gagne v. Booker*, 596 F.3d 335, 341 (6th Cir. 2010). The Courts must balance this inquiry against the state's interests in enforcing the evidentiary rule on which the exclusion was based. *Id.*

At trial, defense counsel attempted to call Mary White as a witness, but the state objected. *Porter I*, at *20. During a later jury-out hearing, defense counsel proffered Ms. White's testimony in order to preserve it for appeal. *Id.* At this time, Ms. White testified that approximately seven or eight years prior to the murder, she was told by an acquaintance that the victim intended to rob or kill her, however the robbery never occurred. *Id.* The trial court ruled that this testimony would be inadmissible "hearsay on hearsay" and found that the evidence was tenuous as it happened so long before the shooting. *Id.* at *21. Petitioner later attempted to introduce similar proof through Valerie Ware, the victim's wife, who had told Ms. White about the victim's intentions towards

her.  *Id.* at *21.  However, the trial court ruled that this testimony was again not relevant because it occurred many years before the shooting.  *Id.* at 22.

On Direct Appeal, the TCCA ruled that it was not error to exclude the testimony of Ms. White and Mrs. Ware regarding the threats, but was error to exclude the portions of their testimony detailing that the victim never actually attempted to rob or harm Ms. White.  *Id.* at *23-24. Specifically, the TCCA found that Ms. White's testimony, whether offered for its truth or to demonstrate its effect on the listener, Ms. White, the evidence would tend to support the state's theory that Petitioner believed the victim had threatened his sister, which would not assist the defense.  *Id.* at *23.  The TCCA noted that if Mrs. Ware's testimony about the threats was offered for its truth, it was inadmissible hearsay, but if offered to prove that the threats were relayed to Ms. White, "it is again difficult to comprehend the relevance to Appellant's defense."  *Id.* However, the court noted that the fact that the victim had never carried through on any alleged threats, which was known firsthand by both women and was therefore not hearsay, would have undermined the state's theory of motive by showing that Petitioner had no reason to actually be angry.  *Id.* at *23-24.  However, the court found that ultimately this was harmless error because it was unlikely to have "swayed the jury and resulted in a different verdict," given the other evidence against Petitioner.  *Id.* at *24.

The Court cannot find that this testimony was critical to Petitioner's defense, much less that the TCCA was unreasonable for failing to find it so.  Although Petitioner seems to disagree, the testimony offered by Ms. White and Mrs. Ware would have been unlikely to undermine the state's theory of motive as it would have underscored the fact that there had been prior issues between the victim and Petitioner's family.  Presumably Petitioner believes that the length of time that passed between the two events and Ms. White's contention that he had never heard about the

events would have undermined the state's theory of motive. At best, this testimony could have done so, but the Court finds that even controverting the proposed motive was unlikely to sway the jury in the face of rather extensive eyewitness testimony identifying Petitioner as the orchestrator and perpetrator of the shooting. Petitioner is not entitled to relief on this claim.

### 3. Ineffective Assistance of Counsel

Petitioner's four remaining claims relate to the efficacy of his counsel at trial. Specifically, he alleges that trial counsel was ineffective when he: (1) raised a theory of self-defense during opening statements and then abandoned that defense, (2) informed the jury that Petitioner was incarcerated, (3) allowed a witness to invoke his Fifth Amendment right to silence, and (4) failed to properly challenge the State's firearms expert. The Court holds that trial counsel was not constitutionally ineffective.

The Sixth Amendment entitles criminal defendants to the "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish that counsel's assistance was constitutionally ineffective, a defendant must prove (1) that counsel's performance was sufficiently deficient that he was no longer "functioning as the 'counsel' guaranteed under the Sixth Amendment[,]" and (2) that his "deficient performance prejudiced the defense… so as to deprive the defendant of a fair trial" and undermined the reliability of trial results. *Id.* To prove deficiency, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To prove prejudice, the defendant must show that he has been prejudiced by his counsel's deficiencies by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The Supreme Court has clarified that when a federal court reviews a state court's application of *Strickland*, which sets its own high bar for claims, "establishing that a state court's application was unreasonable under §2254(d) is all the more difficult." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). "In those circumstances, the question before the habeas court is 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Id.*; *See Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .").

### a. Self-defense

Petitioner alleges that trial counsel was ineffective for raising self-defense in his opening argument and then abandoning this defense without any explanation to the jury, which he believes ultimately destroyed the credibility of the defense [Doc. 1 p. 16-17]. Respondent claims that counsel was not ineffective, because abandoning the self-defense argument was a response to circumstances arising at trial and that regardless of deficiency, Petitioner cannot prove prejudice when there was substantial evidence against him [Doc. 9 p. 39-40]. The Court finds that counsel was not constitutionally ineffective.

Prior to trial, trial counsel filed a notice of self-defense and during his opening statements noted that fact to the jury and highlighted that he expected the testimony to show what kind of character the victim had and that he was in a rage just before the shooting [Add. 1-3 p. 81]. However, at trial, counsel did not raise the specific issue of self-defense, although he did put forth evidence that the victim had a gun prior to being shot, that the victim's gun was hidden after the shooting, and that the victim was mad at the "Athens boys" and was "going to take care of [them]." *Porter II*, at *23. At post-conviction hearings, counsel admitted that he abandoned the theory of

self-defense because he could not successfully develop it. *Id.* at *24. He testified that he had filed the notice of self-defense out of an abundance of caution and based on a pre-trial statement from Mr. Gunter that "Wayne [the victim] comes out and he starts shooting." *Id.* at *23-24. However, trial counsel testified at post-conviction hearings that there were differences in the witnesses' pre-trial statements and their testimony at trial, notably Mr. Gunter stated at trial that he was not referring to the victim as the shooter, that led him to abandon the theory of self-defense. *Id.*

The TCCA held that trial counsel was not ineffective in this regard. *Id.* at *26. It found that although in some circumstances counsel may be ineffective for failing to present evidence promised in opening statements, counsel was not ineffective for changing defense strategy to respond to changing circumstances at trial. *Id.* at *25-26. It further noted that even if counsel's performance in this area had been deficient, Petitioner could not prove prejudice, because there was no indication that the result of his trial would have been different if counsel had used another strategy, when there was ample evidence of his guilt. *Id.* at *26-27.

There are some circumstances in which an unfulfilled promise of evidence to the jury can constitute ineffective assistance of counsel. "It is unreasonable for counsel to promise testimony to the jury without first examining the availability and soundness of such testimony where counsel could, and should, have discovered these details prior to trial." *Plummer v. Jackson*, 491 Fed. Appx. 671 (6th Cir. 2012)(citing *English v. Romanowski*, 602 F.3d 714, 728 (6th Cir. 2010)). Such an unfulfilled promise can create a negative inference in the mind of the jury, who may wonder why the promised testimony was not proffered. *See English*, 602 F.3d at 729. However, *English* makes clear that the ineffective assistance of counsel is formed by the lack of a reasonably investigated basis for the promise, not just the unfulfilled promise itself. *Id.* While counsel generally has a duty to make reasonable investigation, *Strickland* clarifies that counsel can also

reasonably determine that certain investigations are unnecessary. *Strickland*, 466 U.S. at 668 n. 19.

The Court cannot find that the state court's holding was contrary to or an unreasonable application of federal law, nor did it rely on an unreasonable factual finding. The TCCA applied state law in conjunction with *Strickland* to find that counsel was not deficient in changing his trial strategy because his decision was warranted based on changing witness testimony. The Court agrees. Both counsel's performance and the state court's findings are entitled deference, which Petitioner cannot overcome. Without more, the Court cannot conclude that trial counsel was objectively unreasonable for relying on pre-trial statements to serve as the basis of his belief as to what the evidence would show at trial. There is no evidence proffered that trial counsel's investigation was inadequate or that he had reason to know prior to trial that the witness statements would change. Petitioner has pointed to no precedent, and this Court is aware of none, contradicting the TCCA's finding that trial counsel's impromptu decision to abandon a theory of self-defense when the evidence at trial no longer supported such a theory was objectively unreasonable. Petitioner is not entitled to relief on this claim.

### b. Petitioner's Incarceration

Petitioner asserts out that counsel was ineffective for improperly introducing during voir dire that Petitioner was incarcerated when it would have been impermissible for this information to be otherwise introduced [Doc. 1 p. 17]. Respondent replies that the state court reasonably applied *Strickland* in finding that counsel was not deficient, because counsel made a strategic decision that this admission would elicit sympathy for Petitioner [Doc. 9 p. 41-42]. The Court finds that counsel is not deficient in this regard.

During voir dire, counsel told the prospective jurors that Petitioner was incarcerated, although Petitioner was in plain clothes at the time. *Porter II*, at *36-37. At post-conviction hearings, counsel stated, "I sort of want to do that in case a juror or someone sees him in chains or in the back." *Id.* at *36. He stated that this approach was "how [he] learned" and that he felt it was better to just "go ahead and let everyone know." *Id.* at *37. The TCCA cited state and federal law holding that "it is a violation of due process for a state to compel a defendant to stand trial before a jury in prison clothes," but recognized that there "may be tactical reasons why a defendant would choose to be tried in a prison uniform." *Id.* at *37, 38 (citing *State v. Zonge*, 973 S.W. 2d 250, 256 (Tenn. Crim. App. 1997) (citing *Estelle v. Williams*, 425 U.S. 501, 512 (1976))). Even so, they then noted that a brief reference to a defendant's incarceration could not fairly be compared to forcing a defendant to appear before the jury in shackles, particularly where jurors reasonably already know that the defendant is either on bail or in custody at the time of trial. *Id*. The court held that it would not second-guess trial counsel's strategic decision to provide this information to the jury and that Petitioner had made no showing of prejudice. *Id*.

This Court cannot find that the TCCA unreasonably applied federal law. As a strategic decision made by counsel, this is virtually unchallengeable under *Strickland*. *Strickland*, 466 U.S. at 690-91; *see Burton v. Renico*, 391 F.3d 764, 774 (6th Cir. 2004). In order to find for Petitioner, the Court would have to find that there is no reasonable argument that counsel's actions complied with *Strickland's* deferential requirements. *Harrington*, 562 U.S. at 105. Petitioner pointed to no precedent, nor is the Court aware of any, that would indicate that counsel's brief remark regarding Petitioner's incarceration, information the jury likely could have discerned on their own, fell below an objective standard of reasonableness such that it undermined the adversarial process. Neither can the Court find prejudice. Petitioner has presented no evidence that counsel's mentioning of

his incarceration had any impact on trial, or in other words that the results of his trial were reasonably likely to have been different if jurors were not told that he was incarcerated. Petitioner is not entitled to relief on this claim.

### c. Witness Fifth-Amendment

Petitioner argued that counsel was ineffective because he allowed witness Perry Gunter to assert his Fifth Amendment right to silence to certain questions, without objection, when such a use of this right was not permissible [Doc. 1 p. 18-19]. The State responds that trial counsel made a strategic decision to use Gunter's Fifth Amendment assertion to emphasize his criminal history, and as a strategic decision, this tactic was virtually unchallengeable under *Strickland* [Doc. 9 p. 44]. The Court finds that the TCCA was not objectively unreasonable for finding that counsel was not deficient in this regard.

At trial, witness and accomplice Perry Gunter asserted his Fifth Amendment right against self-incrimination four times, to questions regarding whether he was a street dealer and whether he was shot or possessed a weapon during the events described above. *Porter II*, at \*27. Mr. Gunter answered all other questions. *Id.* At post-conviction hearings, trial counsel conceded that he did not object but stated that he did not believe the testimony made any sense and hoped the jurors would see through it and that it would damage the defense. *Id.* at \*28-29. He likewise believed that the witness, as a "street thug," lacked credibility and elicited testimony from Mr. Gunter that he would be able to request less time on his lengthy sentence by testifying against Petitioner. *Id.* at \*29-30. The TCCA noted that as a witness other than the accused, Mr. Gunter was permitted to answer some questions while declining to answer those that may incriminate him. *Id.* at \*27-28. The TCCA found that trial counsel made a reasonable strategic decision to allow Mr. Gunter to assert this privilege which only served to undermine his credibility and made him

look "even more of the 'criminal type.'" *Id.* at \*30. Further, the TCCA declined to find prejudice where Petitioner made no showing that the testimony would have benefitted Petitioner had Mr. Gunter been forced to answer. *Id.*

The Fifth Amendment provision that "no person… shall be compelled in any criminal case to be a witness against himself," extends not only to criminal defendants, but also witnesses who have "reasonable cause to apprehend danger from a direct answer." *Hoffman v. United States*, 341 U.S. 479, 485-86 (1951)(quoting U.S. Const. amend V). This privilege includes the right to refrain from answering not only questions that "would in themselves support a conviction under federal criminal statutes," but also those that would furnish "a link in the chain of evidence needed to prosecute the claimant for a federal crime." *Id.* at 486. "It need only be evident from the implications of the question, in the setting in which it is asked that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Id.* at 486-87.

Although the state court applied state law to this claim, their reasoning is not clearly inapposite to federal law. As detailed above, federal law grants witnesses, even those who are not accused, the right to refrain from answering questions which they reasonably believe would incriminate them and leaves the discernment of "whether his silence is justified" to the court. *Id.* at 486. In this instance, while the appellate court did not make an explicit holding on whether Mr. Gunter's silence was appropriately justified, it did find that counsel was not ineffective for failing to object. The Court agrees. Counsel made a strategic decision to allow Mr. Gunter to dodge questions about his own criminal activity on the night in question, while establishing that Mr. Gunter was a convicted felon, which likely further damaged his credibility to the jury. The Court declines to find deficiency of counsel when there is no presented proof that this was either not a

strategic decision or was made as a result of inadequate preparation. Even if counsel was deficient, the Court cannot find prejudice when it remains unclear whether objection would have resulted in Mr. Gunter's being forced to answer the questions or that his answers, if compelled, would have been favorable to Petitioner. Petitioner is not entitled to relief on this claim.

### d. Firearms Expert

Petitioner alleges that counsel was ineffective for failing to research or consult with a firearms expert or to have properly challenged the testimony of the Prosecution's firearms expert, Agent Shelly Betts [Doc. 1 p. 31]. Respondent states that the state court reasonably applied *Strickland* to find that counsel was not deficient because any challenge to Agent Betts qualification would have likely been fruitless and petitioner did not procedurally comply with requirements to obtain relief on this claim [Doc. 9 p. 45-46]. The Court finds that counsel was not ineffective in this regard.

Special Agent Shelly Betts, with the Tennessee Bureau of Investigation, testified at trial as a firearms expert.[9] *Porter II*, at *40. In his post-conviction appeal, Petitioner contended that trial counsel was ineffective for failing to object to the qualifications of Agent Betts and failing to obtain an expert to controvert her testimony. *Id.* The TCCA ruled that there was nothing in the record to prove that Agent Betts could not have been qualified as an expert or that any objection to her qualifications would have led to her disqualification as a witness, particularly where she had "been previously qualified as a [sic] expert to give her opinion in firearms examination and that she had testified in such cases for the past eight years." *Id.* at *41. The TCCA finally noted that although Petitioner objected to trial counsel's failure to call a rebuttal witness, under Tennessee

---

[9] Agent Betts' testimony was outlined in section I above and for the sake of brevity will not be repeated here.

precedent, he should have presented any such witness at the post-conviction hearing, and that failing to present this evidence or provide proof as to what it would have showed precluded the court from being able to discern any prejudice. *Id.* at *41-42.

The Court does not find that the TCCA's holding involved an unreasonable application or was contrary to federal law. While in some cases, the defense strategy relies on expert evidence and hiring an expert witness will be necessary, defense counsel will not be deficient for failing to hire expert testimony when counsel has a reasonable strategic reason for doing so and takes other measures to contradict the proof offered by the state at trial. *See Hinton v. Alabama*, 571 U.S. 263 (2014); *Harrington*, 562 U.S. at 86. Here, neither the defense strategy nor the prosecution's theory hinged on expert testimony. While Agent Betts identified the bullets and cartridge cases as coming from, or potentially coming from, the same weapon, she did not identify the gun those were fired from or implicate Petitioner specifically. Notably, even if she had opined that multiple weapons had been used in the victim's murder and another shooter had been implicated, this would not have expressly contradicted the other proof offered at trial or precluded Petitioner from being found guilty of first-degree murder.

The Court declines to find that counsel was ineffective such that he undermined the adversarial process when it remains unclear how Petitioner would have benefitted from counsel's objection to Agent Betts' qualifications or any attempt to contradict her with other expert testimony. Petitioner alleges no facts from which the Court can discern that her qualifications could have been successfully challenged and no proof indicating how expert testimony would have contradicted Agent Betts or been exculpatory for Petitioner. Agent Betts testimony was a small piece of the prosecution's evidence, which consisted of far more condemning eyewitness testimony from Petitioner's accomplices identifying Petitioner as arranging and executing the

shooting and demonstrating his motive for doing so. The Court cannot find that the TCCA's holding was contrary to well-established federal law and Petitioner is not entitled to relief on this claim.

## IV. CONCLUSION

For the reasons set forth above, Petitioner's petition for a writ of habeas corpus [Doc. 1] will be **DENIED** and this action will be **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

The Court must now consider whether to issue a certificate of appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

No reasonable jurist would find that the evidence was insufficient to support Petitioner's conviction, that his Sixth Amendment right to present a defense was violated, or that Petitioner's trial counsel was constitutionally ineffective. Accordingly, a **COA SHALL NOT ISSUE.**

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**ENTER:**

_/s/ Harry S. Mattice, Jr._
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE